Filed 8/10/22 P. v. Medina CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075946 |
| v. | (Super.Ct.No. FSB17003515) |
| ARTURO PEREZ MEDINA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Ronald M. Christianson, Judge. Affirmed in part; reversed in part with directions.

Matthew A. Siroka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Banta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Seth Friedman and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

1

PROCEDURAL BACKGROUND

A jury found defendant and appellant, Arturo Perez Medina, guilty of second degree murder (Pen. Code, § 187, subd. (a), count 1),[1] being a felon in possession of a firearm (§ 29800, subd. (a)(1), count 2), and unlawful possession of ammunition (§ 30305, subd. (a)(1), count 3). The jury additionally found true allegations that defendant had committed the murder for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)) and that defendant had personally and intentionally used a firearm causing great bodily injury in his commission of the murder (§ 12022.53, subd. (d)). The court thereafter found true allegations defendant had suffered a prior strike (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)) and a prior serious felony conviction (§ 667, subd. (a)).

At sentencing, on the People's motion, the court dismissed counts 2 and 3. The court sentenced defendant to an aggregate term of imprisonment of 15 years, plus an indeterminate term of 55 years to life consisting of the following: 15 years to life, doubled to 30 years to life due to the prior strike conviction on the murder offense; a consecutive 25 years to life on the personal use enhancement; a consecutive term of 10 years on the gang enhancement; and a consecutive term of five years on the prior serious felony conviction enhancement.[2]

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The abstract of judgment for the determinate term is not contained in the record on appeal.

On appeal, defendant originally contended only that the court had erred in imposing the 10-year determinate term on the gang enhancement. The People conceded the issue. On October 12, 2021, we issued a tentative opinion modifying the sentence but otherwise affirming the judgment.

On October 8, 2021, the governor signed Assembly Bill No. 333 (2021-2022 Reg. Sess.) into law. Effective January 1, 2022, Assembly Bill No. 333 requires, in pertinent part, that to prove a section 186.22 gang enhancement, the People must show that the predicate crimes benefitted the gang more than just in a reputational fashion. On October 18, 2021, defendant filed a motion to file a supplemental brief regarding the impact of Assembly Bill No. 333 on his case. On October 21, 2021, we granted defendant's motion and withdrew our tentative opinion.

Defendant contends that Assembly Bill No. 333 must be applied retroactively to his case because it is not yet final. He argues that insufficient evidence under section 186.22, as amended by Assembly Bill No. 333 (Stats. 2021, ch. 699, § 3), supports the jury's true finding on the gang enhancement. Specifically, he maintains that there was insufficient evidence that the predicate acts were committed collectively by gang members and were committed for more than solely the gang's reputational benefit.

The People concede that Assembly Bill No. 333 applies retroactively to defendant's case and that the matter must be remanded to the superior court because insufficient evidence, under the amended statute, supports that the predicate offenses were committed for anything more than the gang's reputational benefit. However, the People disagree that Assembly Bill No. 333 requires proof that the predicate offenses

3

were committed collectively by gang members. We reverse the gang enhancement and remand the matter with directions to the trial court.[3] In all other respects, we affirm the judgment.

## I. FACTUAL BACKGROUND[4]

The People's gang expert testified that defendant's gang, West Side Verdugo (WV), had established a pattern of criminal activity. He testified that he had arrested one member of WV, Isaac Miranda, for assault with a deadly weapon. Miranda was convicted of assault by means likely to cause great bodily injury for an offense he committed on August 17, 2014. Defendant had nothing to do with that crime other than being a member of the same gang.

The expert had arrested Theo Delagarza, another active member of WV, for possession of a firearm and possession of a controlled substance for sales. Delagarza pled guilty to being a felon in possession of a firearm and being an active participant of a criminal street gang for offenses he committed on May 11, 2014. Defendant had nothing to do with that crime.

Yet another member of WV, Richard Beltran, had been convicted of being a felon in possession of a firearm and an attached gang enhancement for an offense, which occurred on January 30, 2014. Defendant had nothing to do with that offense.

---

[3] Our reversal of the gang enhancement renders moot defendant's original claim that the court erred in imposing the 10-year determinate term on the enhancement.

[4] We present only an abbreviated recitation of the facts as relevant to the issue raised on appeal.

4

Gang members want their "fellow gang members to know they are willing to commit these crimes and do these violent acts to gain status and not necessarily want to be pointed out in a court setting in fear of repercussions of incarceration. So there's a fine balance . . . ."

The expert testified that he was familiar with defendant; as a gang investigator, he had found that defendant associates with other members of WV and was documented by other officers as an active member of WV. The expert opined that the crimes in the instant case "were committed for the benefit of, at the direction of, [and] in association with a criminal street gang with the specific purpose of promoting, furthering, [and] assisting in criminal conduct by members."

The offenses benefited the gang because a "criminal street gang cannot operate without . . . tools. They need weapons. They need to instill fear into the community and into other gang members." "They use these items to instill fear in order to operate their business. If . . . a criminal street gang instills fear into the community, they will be less likely to call the police when they see crime occurring or less likely to testify in court. . . . They also have status now. When another gang is afraid of a specific gang because they're the type of gang to show violence, they'll be less likely to rival them and intrude onto their business. Therefore, they're able to operate in a larger scale and franchise out to different areas of the city or geographical areas."

Where a gang member commits a crime in public, "[i]t builds status for that specific gang member within that gang, and it builds status of that gang. With the status comes fear and intimidation . . . other gangs not wanting to rival with them or infringe on

5

their geographical areas or their business. It also instills fear to show that this gang is a violent criminal street gang that's willing to do violent acts. And it's going to instill fear into the community."

"It's going to allow people not to want to testify in court, call the police and put themselves in harm's way for fear of retaliation. A gang—a criminal street gang operates off this fear and intimidation. . . . Without that fear and that intimidation, other rival gangs would stop in on their area, people would be more likely to call the police and testify against them. [¶] And when a specific gang member does a violent act and jeopardizes their freedom, there's repercussions that can come with those things. It builds status to that specific gang member, and they're able to move up the ranks of that gang into more prominent leadership roles or mid-management. [¶] They're able to do these illegal acts without fear of repercussions of going through the court process and being held accountable for their actions."

## II. DISCUSSION

Defendant contends that Assembly Bill No. 333 must be applied retroactively to his case because it is not yet final. He argues that insufficient evidence under section 186.22, as amended by Assembly Bill No. 333, supports the jury's true finding on the gang enhancement. Specifically, he maintains that there was insufficient evidence that the predicate acts were committed collectively by gang members and were committed for more than solely the gang's reputational benefit.

The People concede that Assembly Bill No. 333 applies retroactively to defendant's case and that the matter must be remanded to the superior court because

6

insufficient evidence, under the amended statute, supports that the predicate offenses were committed for anything more than the gang's reputational benefit. However, the People disagree that under Assembly Bill No. 333, they were required to present evidence that the predicate offenses were committed *collectively* by gang members. We agree with the People.

"Assembly Bill 333's substantive changes apply retroactively to all cases—like [defendant]'s—in which the judgment of conviction is not yet final because the changes 'redefine, to the benefit of defendants, conduct subject to criminal sanctions.'" (*People v. E.H.* (2022) 75 Cal.App.5th 467, 478.) "Assembly Bill 333 [now] requires the prosecution to prove the benefit the gang derives from the predicate and current offenses is 'more than reputational.' [Citation.] New section 186.22, subdivision (g), provides, 'As used in this chapter, to benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant.'" (*Id.* at p. 478.) "Because Assembly Bill 333 essentially adds new elements to the substantive offense and enhancements in section 186.22 . . . the prejudice standard articulated in *Chapman v. California* (1967) 386 U.S. 18, 24 . . . applies. [Citation.] Under that standard, the absence of instruction on the amended version of section 186.22 requires reversal unless 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.'" (*Id.* at p. 479.)

7

Here, the parties agree, and so do we, that reversal is required because the People's expert witness testified that the only benefit to WV of the predicate offenses was reputational. Thus, the gang enhancement must be reversed, and the matter remanded to give the People the opportunity to retry it. (*People v. E.H.*, *supra*, 75 Cal.App.5th at p. 480 ["The proper remedy for this type of failure of proof —where newly required elements were 'never tried' to the jury—is to remand and give the People an opportunity to retry the affected charges."].)

However, the People disagree with defendant's contention that they were required, under the amended statute, to prove that the predicate offenses were committed "collectively," i.e., that they were each committed by more than one WV gang member. We agree with the People.

"Assembly Bill 333 also 'redefines "pattern of criminal gang activity" to require . . . that the predicate offenses "were committed on separate occasions or by two or more members, the offenses commonly benefited a criminal street gang, and the common benefit of the offenses is more than reputational."'" (*People v. Vasquez* (2022) 74 Cal.App.5th 1021, 1032.) In *People v. Delgado* (2022) 74 Cal.App.5th 1067 (*Delgado*), the court rejected "the People's contention that proof that *individual* gang members committed the predicate offenses on separate occasions is sufficient to show the gang members 'collectively' engaged in a pattern of criminal activity." (*Id*. at p. 1073, italics added.)

Instead, the *Delgado* court "read the term 'collectively' in a commonsense manner to mean what it says—committed by more than one person, and not, as argued by the People, individually but on a different day." (*Id*. at pp. 1088-1089.) The *Delgado* court

8

agreed with the defendant that "amended subdivision (f)'s requirement that gang members 'collectively engage' in a pattern of criminal gang activity means the People were required to prove that two or more gang members committed each predicate offense in concert . . . ." (*Id.* at p. 1088.) Thus, the court reversed the gang enhancement because the People presented no evidence that multiple gang members committed the predicate offenses and "because the trial court erred in instructing the jury under former subdivision (f) that it could find the gang enhancements true if the People proved that members of the . . . gang, '*whether acting alone* or together, engage in or have engaged in a pattern of criminal gang activity.'" (*Id.* at p. 1088, italics added.)

Similarly, the court in *People v. Lopez* (2021) 73 Cal.App.5th 327 (*Lopez*), noted that when Assembly Bill No. 333 became effective it would "require the prosecution to prove collective, not merely individual, engagement in a pattern of criminal gang activity." (*Lopez*, at p. 345.) "[P]ursuant to the new legislation, imposition of a gang enhancement requires proof [that] the predicate offenses must be committed on separate occasions or *by two or more gang members* . . . ." (*Ibid.*, italics added.)

More recently a panel of this court in *People v. Clark* (2022) 81 Cal.App.5th 133 (*Clark*), disagreed with both *Delgado* and *Lopez*. (*Clark*, at pp. 144-145.) *Clark* did not find "the *Delgado* analysis to be persuasive because it turned to legislative history after merely defining the word 'collectively.' [Citation.] It did not . . . devote sufficient attention to the plain language of the statute." (*Id.* at p. 145.) The *Clark* court reasoned, "[i]f 'collectively' means the prior crimes must have been committed in concert, then the first alternative in subdivision (e)(1) is rendered surplusage. The two alternatives are

9

proving that '[(1)] the offenses were committed on separate occasions or [(2)] by two or more members.' (§ 186.22, subd. (e)(1).) If 'collectively' means the predicate crimes had to be committed in concert, then the prosecutor must always prove the predicate crimes were committed 'by two or more members.' The alternative option that 'the offenses were committed on separate occasions' would be surplusage. (§ 186.22, subd. (e)(1).) We avoid interpreting the statute in a manner that would render one of the explicit options surplusage." (*Ibid*.)

*Clark* did "not find *Lopez* to be persuasive authority because it did not provide a plain language analysis of the statute pertaining to the phrases (A) 'members collectively' (§ 186.22, subd. (f)); and (B) 'the offenses were committed on separate occasions or by two or more members' (§ 186.22, subd. (e)(1))." (*Clark*, *supra*, 81 Cal.App.5th at p. 145.) Thus, *Clark* concluded that "a pattern of criminal gang activity may be established by (1) two gang members who separately committed crimes on different occasions, or (2) two gang members who committed a crime together on a single occasion." (*Id*. at pp. 145-146)

We agree with our colleagues on this court in *Clark*. Thus, here, the People adduced sufficient evidence below that the predicate offenses "'were committed on separate occasions.'" (*Clark*, *supra*, 81 Cal.App.5th at p. 145.)

10

## III. DISPOSITION

We reverse the judgment as to the gang enhancement. The matter is remanded for the trial court to provide the People an opportunity to retry the section 186.22 enhancement under the law as amended by Assembly Bill No. 333; if the People elect not to retry the enhancement, the trial court is directed to impose a new sentence without the section 186.22 enhancement. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

SLOUGH
J.

MENETREZ
J.

11